UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **DONNAMARIE JAROSZ, individually and derivatively on behalf of KSJ & Associates, Inc.,**<br><br>104 Spring Line Drive<br>Vero Beach, Florida 32963<br><br>      **Plaintiffs,**<br>v.<br><br>**KASIMIER JAROSZ,**<br><br>7102 Magdalene Ct.<br>Easton, MD 21601<br>Talbot County<br><br>      **Defendant.** | Case No. 22-cv-2594 |

## VERIFIED COMPLAINT

Plaintiff DonnaMarie Jarosz, in her individual capacity and also derivatively on behalf of KSJ & Associates, Inc. hereby states for her Verified Complaint as follows.

## STATEMENT OF THE CASE

1. This is a commercial dispute about efforts by Defendant Kasimier Jarosz to sabotage the business he owns jointly with his ex-wife, Plaintiff DonnaMarie Jarosz, to prevent her from gaining the fair benefit of the settlement agreement they negotiated in connection with their divorce proceedings in Maryland. The company, KSJ & Associates, Inc. ("KSJ") was once valued at over $14 million. But once the divorce resulted in Plaintiff becoming a 50-50 owner of KSJ, Mr. Jarosz opted to tank the business and misappropriate company assets, including providing a company vehicle to his new girlfriend, rather than manage the business for the two shareholders' mutual benefit in good faith. Mr. Jarosz's conduct had the effect of depleting the bulk of KSJ's value and leading directly to the imminent dissolution of the company. Accordingly,

and as more fully alleged below, Plaintiff brings this derivative action on behalf of KSJ seeking to (i) recover damages on behalf of KSJ for Mr. Jarosz's breach of fiduciary duties, and (ii) require Mr. Jarosz to account to KSJ for his use of company funds and other resources; Plaintiff also proceeds in her individual capacity to (iii) recover damages on her own behalf for Mr. Jarosz's multiple breaches of the parties' divorce settlement agreement, and (iv) obtain restitution as a result of Mr. Jarosz's unjust enrichment.

**PARTIES**

2.      Plaintiff DonnaMarie Jarosz owns 50% of the stock of KSJ.  Ms. Jarosz serves on the Board of Directors of KSJ.  She is a citizen of the state of Florida.

3.      KSJ & Associates, Inc. is a Virginia corporation with its principal place of business in Virginia.

4.      Defendant Kasimier "Kasey" Jarosz is a citizen of the State of Maryland. Mr. Jarosz is the Chief Executive Officer of KSJ, serves as a member of the Board of Directors, and owns the other 50% of the stock of KSJ.

**JURISDICTION AND VENUE**

5.      This Court has diversity jurisdiction over this matter under 28 U.S.C. § 1332. Complete diversity exists because Plaintiff Ms. Jarosz is a citizen of Florida, Plaintiff KSJ & Associates is a citizen of Virginia, and Defendant Mr. Jarosz is a citizen of Maryland.  The amount in controversy substantially exceeds the jurisdictional threshold of $75,000.

6.      This Court may exercise personal jurisdiction over Mr. Jarosz under Md. Courts Jud. Pro. Code Ann. § 6-102 and Federal Rule of Civil Procedure 4(k) because he is domiciled in Maryland and/or will be served with process in Maryland.

7. Venue is proper in the Court under 28 U.S.C. § 1391 and 28 U.S.C. § 1401 because Mr. Jarosz resides in the state of Maryland.

## FACTS

### Ms. Jarosz Acquired 50% Ownership in KSJ in 2017

8. During their marriage, the parties created and worked together to develop KSJ, a successful government contracting business. KSJ was incorporated on August 1, 1999. It is currently a closely-held S-Corporation.

9. KSJ is a privately held professional consulting firm that specializes in providing Information Technology management, technical support, and consulting services to the Department of Defense, federal and state agencies.

10. In connection with their divorce, on January 24, 2017, Ms. Jarosz and Mr. Jarosz negotiated and entered into a Property Settlement Agreement ("PSA"). A true and accurate copy of the PSA is attached hereto as **Exhibit A**.

11. Pursuant to the PSA, Mr. and Ms. Jarosz were to become equal co-owners of KSJ by each receiving 50% of the outstanding KSJ shares. To date, both Mr. and Ms. Jarosz remain equal owners of KSJ with equal voting rights.

12. Plaintiff and Mr. Jarosz are the only two members of KSJ's two-member Board of Directors, with equal voting rights.

13. Under the PSA, Mr. Jarosz has "authority to manage [KSJ] on a day-to-day basis and shall be responsible for the day to day operation of [KSJ]." *Id*. at § 12.g.

14. The PSA, however, made clear that Plaintiff was an equal co-owner in the business. The agreement expressly provided that she "will have authority and be involved in any major decisions regarding the Company, including the sale, incurring debt or such other things as a 50% owner of a company would normally be involved in." *Id.* Likewise, Mr. Jarosz was prohibited

from taking any "extraordinary activity on behalf of the Company without the consent of [Ms. Jarosz]." *Id.*

15. Both parties were prohibited from taking "any action which would adversely affect the value of the Company." *Id*. at § 12.g.

16. Ms. Jarosz was to be granted equal access to KSJ's monthly statements and was provided "full signature authority on writing checks for disbursements or any other financial matters pertaining to" KSJ. *Id.* at § 12.g.

17. The PSA provides that distributions "will occur at a minimum of twice a year" and that distributions are "anticipated" to occur "on or before June 15 of each year and on or before December 15 of year." *Id* at § 12.b.

18. Mr. and Ms. Jarosz agreed to "cooperate with each other to make sure the Company runs smoothly." *Id.*

19. While the PSA provided for the continued operation of the KSJ, third parties also had expressed interest in purchasing the company. The PSA provides that Mr. Jarosz would be "the main point of contact for the sale of the Company," but that Plaintiff would be apprised of all activity and equal access to all related documents. *Id.* at § 12.

20. On February 2, 2017, the Circuit Court of Maryland for Anne Arundel County entered Judgement of Absolute Divorce between Ms. Jarosz and Ms. Jarosz, incorporating the PSA.

21. Co-ownership in KSJ was an essential provision of the parties' settlement agreement in divorce. Ms. Jarosz waived alimony and rights to any discovery and valuation of the marital estate as part of the PSA.

22. At the time of the court order of divorce, KSJ had an estimated value of $14.4 million.

### Mr. Jarosz Sabotages KSJ After Ms. Jarosz Became A Co-Owner

23. Under Mr. Jarosz's management, KSJ has lost nearly all of its value.

24. Rather than manage the company or seek a sale of the company, Mr. Jarosz neglected KSJ while using it as his personal piggybank. KSJ's corporate credit card statements include thousands of dollars of personal expenses charged by Mr. Jarosz for personal gifts, vacations, and other unrelated matters.

25. Mr. Jarosz has tried to hide such misconduct from Ms. Jarosz, even though she had a plain right to KSJ's business statements, including credit card statements.

26. Frustrated by Mr. Jarosz's mismanagement and concealment of records, Ms. Jarosz requested in 2020 that the Circuit Court for Anne Arundel County find Mr. Jarosz in contempt of the divorce decree that incorporated the PSA.

27. The Circuit Court agreed that Mr. Jarosz was not complying with the PSA and found him in contempt. A true and correct copy of that order dated September 9, 2020 is attached hereto as **Exhibit B.**

28. Circuit Court Judge Glenn L. Klavans ordered that Mr. Jarosz must "[s]trictly adhere to all terms and conditions of the [PSA]" and "[i]nvestigate and consider all potential sale opportunities for [KSJ] jointly with [Ms. Jarosz]" to purge the contempt order. Ex. B.

29. The contempt order did little to alter Mr. Jarosz's behavior. Rather than investigate and consider a sale, Mr. Jarosz said in May 2021 that he would sooner "allow the business to die" than cooperate with Plaintiff. Mr. Jarosz declined to engage a broker for a potential sale and at least three times rebuffed inquiries for non-disclosure agreements to support sale-related

discussions.  At the same time, Mr. Jarosz disengaged from day-to-day operation of the company, thereby effectuating his stated intent to "allow the business to die."

30. Mr. Jarosz has directed KSJ's president and the former comptroller to not answer Plaintiff's requests for information, including denying or ignoring requests for financial statements to which Plaintiff is plainly entitled under the PSA and under the Virginia Stock Corporation Act as a shareholder and director.

31. In 2022, Mr. Jarosz has continued to neglect and devalue KSJ.  Mr. Jarosz has told Plaintiff that KSJ will "be worth close to zero" after he is finished with it.

32. Mr. Jarosz made clear that he intends to abandon the company. On March 3, 2022, Mr. Jarosz stated that he wants to retire and "have no association with the company at all."  A few days later, Mr. Jarosz reiterated his intention to abandon KSJ and stated that his "final day with KSJ will be September 30, 2022, or SOONER."

33. Mr. Jarosz prohibited Plaintiff from authorizing a distribution in 2022 despite the parties' agreement in the PSA that she had "full signature authority on writing checks for disbursements or any other financial matters" and that distributions should occur *at least* twice a year. Ex. A at § 12.g.

34. Only after Ms. Jarosz initiated *another* contempt proceeding did Mr. Jarosz authorize a distribution in 2022.

35. The senior management of the company is aware of Mr. Jarosz's desire to leave and his public quarreling with his ex-wife and 50% shareholder.  As a result of Mr. Jarosz's words and actions, the company has experienced significant turnover and has suffered significant financial setbacks.

36. Because of Mr. Jarosz's willful misconduct, KSJ, once worth over $14 million, is now essentially out of business, leading the parties to agree to cooperate in a contemplated dissolution.

37. Despite this willful misconduct and neglect, and Plaintiff's written requests for the corporation to take action against Mr. Jarosz, KSJ has not brought legal action against him.

**Mr. Jarosz Refuses to Cooperate with an Orderly Dissolution and Wind Down**

38. On the day scheduled for hearing Ms. Jarosz's third petition for contempt, September 9, 2022, Mr. Jarosz finally agreed to make an immediate distribution to shareholders as required by the PSA, enabling the parties to stipulate to dismissal of the contempt proceeding.

39. The stipulation and consent order incorporated Mr. Jarosz's representation that substantially all of the company's contracts are terminated or imminently terminating, such that insufficient assets remain to warrant marketing KSJ for sale. On that basis, the parties agreed to cooperate in a voluntary dissolution and winding up of KSJ.

40. In furtherance of that agreement, Ms. Jarosz sought to obtain confirmation that Mr. Jarosz would participate in an orderly dissolution process without seeking to enrich himself at the company's expense.

41. Specifically, Ms. Jarosz asked Mr. Jarosz to agree that cancellation or assignment of company contracts would be handled in a manner to preclude assumption, retention, or transfer to Mr. Jarosz personally or for his benefit, and that Mr. Jarosz would relinquish the Top Secret security clearance sponsored by the company for company contracts.

42. Mr. Jarosz rejected both requests. Not only did he refuse to refrain in these ways from seeking to enrich himself at the company's expense, but he likewise refused proposals to retain corporate records, authorize procedures to secure and account for corporate assets, or even to notify employees of the dissolution itself.

43. Because Mr. Jarosz represents exactly 50% of the board of directors and 50% of the shareholders, his refusal to cooperate renders voluntary dissolution impossible, necessitating judicial oversight of KSJ in the dissolution and wind down process.

## COUNT I

### Breach of Fiduciary Duty
### Derivative Action on behalf of KSJ

44. Ms. Jarosz, derivatively on behalf of KSJ, incorporates and realleges the allegations in Paragraphs 1 through 43 of the Complaint as if fully stated herein.

45. Ms. Jarosz was and remains a shareholder at the time of all transactions complained of above.

46. This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

47. On March 16, 2022, Plaintiff, by counsel, transmitted a letter under Va. Code § 13.2-672.1 to Mr. Jarosz, the President of KSJ Jaja Martinez, and the accountant and counsel for KSJ. The letter demanded that KSJ bring legal action against Defendant for his breach of fiduciary duties owed to the company ("Demand Letter"). A true and accurate copy of the Demand Letter is attached hereto as **Exhibit C.**

48. Over six months have passed since the Demand Letter and KSJ has not taken any action whatsoever against Mr. Jarosz despite his gross mismanagement and breach of fiduciary duties.

49. Plaintiff has complied with all requirements to bring a derivative claim under Va. Code Ann. § 13.1-672.1, Federal Rule of Civil Procedure 23.1, and to the extent applicable, Maryland law regarding derivative actions.

50. As the CEO and Director of KSJ, Mr. Jarosz owes fiduciary duties of care and loyalty to KSJ and its shareholders, including a duty to maintain the value of the company and to refrain from using corporate assets or opportunities for personal gain.

51. Mr. Jarosz has breached those duties by, *inter alia*, sabotaging KSJ by refusing to manage the business on a day-to-day basis, using the company credit cards to fund significant personal expenses, and providing a company car to his girlfriend, while refusing to maximize the value of the company through discussions with interested purchasers and denying rights of access and disclosure for oversight by the only other shareholder besides himself.

52. Mr. Jarosz's actions in managing KSJ have not been made in good faith.

53. KSJ has suffered damages proximately caused by Mr. Jarosz's breach of his fiduciary duties.

## COUNT II

### Equitable Accounting
### Derivative Action on behalf of KSJ

54. Plaintiff, derivatively on behalf of KSJ, incorporates and realleges the allegations in Paragraphs 1 through 53 of the Complaint as if fully stated herein.

55. Mr. Jarosz, as a director of KSJ, owes a fiduciary of disclosure to the company and his fellow director.

56. In addition to grossly abusing the position of director and/or intentionally inflicting harm on KSJ for his personal gain, Mr. Jarosz instructed company personnel to deny or avoid requests from Ms. Jarosz for financial statements, bank records, general ledgers, and other materials to which she is entitled.

57. Mr. Jarosz additionally has been using company credit cards and other resources for personal expenditures, for which he has withheld adequate accounting from review by KSJ.

58.     Mr. Jarosz's course of conduct has denied KSJ unrestricted access to its own accounts, thereby compromising the company's ability to manage its affairs, including in dissolution.

59.     KSJ lacks an adequate remedy in law for Mr. Jarosz's breach of his duty of disclosure.

60.     Accordingly, KSJ is entitled to accounting in equity against its fiduciary, Mr. Jarosz, under Va. Code Ann. § 8.01-31.

### COUNT III

### Breach of Contract
### By Ms. Jarosz Individually

61.     Ms. Jarosz alleges the allegations in Paragraphs 1 through 43 as if fully set forth herein.

62.     The PSA entered into between Mr. and Ms. Jarosz is a valid, enforceable contract supported by consideration.

63.     Mr. Jarosz has breached the PSA by, *inter alia*, failing to comply with the express covenants not to take actions to adversely affect the value of the company and to cooperate with Ms. Jarosz to make sure the company runs smoothly, as well as the covenant of good faith and fair dealing implied in the agreement.

64.     Mr. Jarosz also has breached the PSA by refusing to provide, and causing others to refuse to provide, company information to which Plaintiff is entitled under the agreement, or until the court order resolving the third contempt petition, to authorize or permit a distribution in 2022. Mr. Jarosz also ignored or repudiated repeated efforts to pursue a sale of the company at a time when it retained significant value, in contravention of the PSA requirement that he maintain a primary role managing the sale process.

65. Mr. Jarosz's breaches of the PSA have injured Plaintiff by, *inter alia*, devaluing her substantial interest in a company once valued at over $14 million to almost nothing, materially delaying her access to a mandatory distribution under the PSA, and interfering with Plaintiff's ability to prepare her personal income taxes leading to penalties charged by the IRS.

66. The PSA entitles the prevailing party in an action to enforce the PSA to recover from the breaching party its attorney's fees and court costs actually incurred.

## COUNT IV

### Unjust Enrichment
### By Ms. Jarosz Individually

67. Ms. Jarosz alleges the allegations in Paragraphs 1 through 43 as if fully set forth herein.

68. In the alternative to her breach of contract claim, Plaintiff individually brings an unjust enrichment claim against Mr. Jarosz.

69. By engaging in the conduct described above, Mr. Jarosz received a benefit by reason of infringement of Plaintiff's interest, or of loss suffered by Plaintiff, in the value of KSJ and the continued operation of KSJ.

70. Mr. Jarosz therefore owes restitution to Plaintiff in the manner and amount necessary to prevent his unjust enrichment.

## JURY DEMAND

Plaintiff demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff hereby prays for the following relief:

a. Damages in an amount to be proven at trial payable to KSJ as a result of Mr. Jarosz's breach of a fiduciary duty as pleaded in Count I.

b. An equitable accounting under Va. Code Ann. § 8.01-31 and audit as a result of Mr. Jarosz's breach of fiduciary duties as pleaded in Count II.

c. Damages in an amount to be proven at trial payable to Plaintiff as a result of Mr. Jarosz's breach of express contract and breach of the implied covenant as pleaded in Count III.

d. Restitution in an amount to be proven at trial payable to Plaintiff as a result of Mr. Jarosz's unjust enrichment as pleaded in Count IV.

e. An award of Ms. Jarosz's attorney's fees and costs incurred in her efforts to enforce the PSA.

f. Any such equitable or other relief the Court deems just and proper.

Dated: October 11, 2022

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

/s/ Jason R. Scherr
Jason R. Scherr (Bar No. 25633)
Patrick A. Harvey (Bar No. 18758)
1111 Pennsylvania Avenue, NW
Washington, D.C. 20004
Tel: 202-739-6000
Fax: 202-739-6001
Email: patrick.harvey@morganlewis.com
          jr.scherr@morganlewis.com

*Attorneys for Plaintiffs*

## **VERIFICATION**

I, Plaintiff DonnaMarie Jarosz, hereby declare under penalty of perjury that the allegations contained in the foregoing complaint are true and correct.

Executed on: October _8_, 2022

DonnaMarie Jarosz